RUSSELL E. WATSON, RESPONDENT, v. LEWIS NIXON,
APPELLANT.

Submitted December 6, 1920—Decided February 28, 1921.

On appeal from the Supreme Court.

This was an action in the Middlesex County Circuit Court tried before the court without a jury, and resulted in a judgment for the plaintiff. In granting the judgment Judge Lloyd, who presided, delivered the following opinion:

"This action seeks to recover the sum of $10,000, with interest, upon a written agreement dated February 15th, 1918, between one Rodney Miller and the defendant, Lewis Nixon. The plaintiff is the assignee of Miller and stands in his place, vested with his rights.

"The agreement purports to assign to Nixon certain options for the purchase of lands presumably near Metuchen, New Jersey. After reciting other elements of consideration this pertinent and important clause is inserted: That if the certain lands therein mentioned 'are not conveyed or effectually sold or disposed of by or from said Lewis Nixon, directly or indirectly, within one year from the date hereof to the United States of America, directly or indirectly, then, immediately upon the termination of said year, said Lewis Nixon shall pay to said Rodney Miller the sum of ten thousand dollars.'

"The government was already in possession of the lands in question under requisitions for temporary use at the time of the making of the foregoing agreement and had erected sundry buildings in connection with its war work. On the 6th day of February, 1919, and within nine days of the expiration of the year, specified in the above-recited clause, a final requisition was issued. This requisition, after reciting the earlier requisitions, proceeds:

" 'Now, therefore, by virtue of the authority vested in him by the constitution and laws of the United States, the President of the United States, commander-in-chief of the army and navy, does hereby requisition for storage facilities for supplies acquired for public use connected with the common defence, the following: The fee-simple title to [describing the lands in question] * * * "And, therefore, I do authorize and command any officer of the United States army in whose hands this requisition shall come to take the fee-simple to said lands hereinbefore described by metes and bounds, and to continue in possession of such parts thereof as are already in the possession of the United States, and to take immediate possession of the remainder thereof, for the purpose above specified; to receipt for the same in the name of the United States, to the end that, among other things, just compensation may be ascertained and paid therefor, and to make return * * * of all things done and proceedings had in the execution of this requisition." '

"So far as the evidence discloses no steps were taken in execution of this requisition until March 7th, 1919, when a copy was served on Nixon and a receipt for the lands given in the name of the United States, by Captain Seymour.

"The plaintiff contends that under the above state of facts the contingency provided for in the agreement as to disposal within the year has not been met, and a number of reasons are assigned for this view. These reasons I will take up in their order.

"First, it is claimed that acquisition by the government through requisition was not within the contemplation of the parties. I think otherwise. The language used is full and explicit to cover any method of transfer from Nixon to the United States. It could be by him or from him, directly or indirectly, and as if to leave no doubt of that purpose the words 'directly or indirectly' are applied to acquisition by the United States. While the words 'sold by or from' Nixon might not comprehend a requisition from the government, I think there can be no doubt that the words 'disposed of' are amply sufficient for the purpose. As I read the agreement it

evinces the clear intent to cover any method whereby Nixon's title in fee should be divested and the same title obtained by the United States.

"Second, it is contended that the Food and Fuel act of August 10th, 1917, did not authorize the taking of this title in fee. Section 10 of the act empowers the President from time to time to 'requisition foods, feeds, fuels and other supplies necessary to the support of the army or maintenance of the navy, or any other use connected with the common defence, and to requisition or otherwise provide storage facilities for such supplies.' It is under the power to provide storage facilities that the right is claimed by the government and by the defendant in this action. It would seem a somewhat slender basis upon which to erect so great a structure as the taking the fee to upwards of two thousand acres of land for the Raritan arsenal, and this view has apparently impressed other minds. Judge Rose of the United States District Court in the case of *Canton Co.* v. *Marsh,* May 14th, 1919, doubted the sufficiency of the act to authorize the requisition of lands adjoining Camp Holabird for the running of additional tracks into the camp proper. The department opinions from the judge advocate general would indicate a governmental uneasiness on the question. *Opinion* 601, *J. A. G.,* March 8th, 1919. I am not, however, in my opinion, called upon to deal with this important phase of the case, which is fraught with most serious consequences, as I am sure the conclusion I have reached may safely rest on other grounds.

"Third, it is claimed that not only must the title have passed but the consideration must have been paid within the year. I think this position clearly untenable. The portions of the agreement relied on for this view seem to me not to refer to the year but to the duty resting on Nixon upon receipt of the moneys. The view that the acquisition might be by requisition leads to the same conclusion, for it is well known that the government of the United States moves slowly in the matter of paying its debts.

"Fourth, the plaintiff claims that the requisition did not operate to transfer the title within the year, and to this I agree. There is nothing in the requisition itself fixing a time for it to take effect. The nearest approach thereto is the use of the words in the present 'does hereby requisition.' Such a declaration, however, did not execute itself. It had no more effect than the words 'hereby convey,' contained in a deed which is never delivered. The act was not a proclamation; it was an order simply. It might have lain dormant in the war office or locked in the pocket of the executing officer [as, indeed, it did in this instance] for months. It might, as in this instance, remain unknown to the parties affected and invite illegal transfers of title in these busy days of bargains and sales. If force is given to it as of its date all sorts of complications would certainly suggest themselves, and if applied in this class of taking it should be applied with equal force to the vast number of similar requisitions during the war for personal property with all its consequential confusion in the business world. The terms of the requisition, also, I think, indicate a form of execution which alone would make it effective. The officer was to take possession, give a receipt, and thereafter make return. Until it was executed it was in the power of the government to recall it to the authority whence it emanated. That this view is correct is attested by the fact that the government law officers' opinions hold that service is essential to a valid requisition, probably representing an attitude assumed in all our wars.

" 'If the property can be taken by requisition order the title and possession under such order passed to the United States immediately upon the *service* of the order.' *Opinions, J. A. G.* 386.

" 'By the *issuance* and *service* of the requisition the government has acquired title in fee.' *Opinions, J. A. G.* 601.01, March 22d, 1919.

"In an opinion covering this very title: 'The issuance and service of the requisition taking title to real estate vests in the government the title in fee-simple.' *Ibid.,* 601.01, March 8th, 1919.

"In an appropriation bill just passed both houses of congress the inefficacy of unserved requisition in this very case is provided for by the direction 'that where the title to the above-described real estate [that here involved] sought to be acquired by such requisition [the one before me] already served, proves to be defective by reason of the fact that all necessary parties in interest were not served with requisitions, or for any reason, the secretary of war be and he hereby is authorized to purchase or to acquire by condemnation,' &c.

"The war board in awarding compensation, it appears from the proofs in the case, makes its awards of principal and interest from the date of service.

"Therefore, from the standpoint of reason, from the standpoint of a practical construction given by the government, and from the argument *ab inconvenienti,* I must hold that the requisition was ineffective to pass title to the lands in question within the year called for by the agreement between the parties, and that the plaintiff is therefore entitled to recover."

For the appellant, *Peter F. Daly* and *John P. Kirkpatrick.*

For the respondent, *Russell E. Watson, pro se.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Lloyd, J., at the Circuit.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ.   15.

*For reversal*—None.